**Michael KORZENIOWSKI, Plaintiff,**

v.

**ABF FREIGHT SYSTEMS, INC., Defendant.**

**No. 98 C 595.**

United States District Court,
N.D. Illinois,
Eastern Division.

March 17, 1999.

James B. McCabe, Chicago, IL, for plaintiff.

Charles C. Jackson, Theodore C. Stamatakos and S. Leigh Jeter of Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Michael Korzeniowski ("Korzeniowski") has sued ABF Freight Systems, Inc. ("ABF"), asserting that ABF violated the Americans with Disabilities Act ("ADA," 42 U.S.C. §§ 12101–12117[1]) by discriminating against him because of his arteriosclerotic heart disease. Korzeniowski brought additional claims of age discrimination under the Age Discrimination in Employment Act ("ADEA," 29 U.S.C. §§ 621–634) and intentional infliction of emotional distress, an Illinois common law claim over which this Court has 28 U.S.C. § 1367(a) supplemental jurisdiction.

ABF now moves for summary judgment under Fed.R.Civ.P. ("Rule") 56. Both sides have complied with this District Court's General Rule ("GR") 12(M) and 12(N),[2] and the motion is fully briefed and ready for decision. For the reasons set out in this memorandum opinion and order, ABF's motion is granted and this action is dismissed.

---

**1.** Further ADA citations will take the form "Section ___," referring to the Title 42 numbering rather than ADA's internal numbering. Pertinent regulations from 29 C.F.R. are cited "Reg. § ___."

**2.** GR 12(M) and (N) are designed to facilitate the resolution of Rule 56 motions by calling for evidentiary statements and responses to

*Summary Judgment Standards*

Familiar Rule 56 principles impose on ABF the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). For that purpose this Court must "read[ ] the record in the light most favorable to the non-moving party," although it "is not required to draw unreasonable inferences from the evidence" (*St. Louis N. Joint Venture v. P & L Enters., Inc.*, 116 F.3d 262, 265 n. 2 (7th Cir.1997)). While "this general standard is applied with added rigor in employment discrimination cases, where intent is inevitably the central issue" (*McCoy v. WGN Continental Broad. Co.*, 957 F.2d 368, 370–71 (7th Cir.1992)), that does not negate the potential for summary judgment in cases where a movant plainly satisfies the Rule 56 standards (*Washington v. Lake County*, 969 F.2d 250, 254 (7th Cir.1992)). In those terms summary judgment is appropriate if the record reveals that no reasonable jury could conclude that Korzeniowski was treated in a statutorily prohibited discriminatory fashion (see *Fuka v. Thomson Consumer Elecs.*, 82 F.3d 1397, 1402 (7th Cir. 1996) and cases cited there).

As with every summary judgment motion, this Court accepts nonmovant Korzeniowski's version of any disputed facts. What follows in the *Facts* section (and in later factual discussion) is culled from the parties' submissions, with any differences between them resolved in Korzeniowski's favor. Other relevant facts, which fit somewhat better into the substantive legal discussion, will be set out later in this opinion.

---

such statements (in each instance with record citations), thus highlighting the existence or nonexistence of factual disputes. This opinion cites to ABF's GR 12(M) statement as "A. 12(M) ¶ ___" and to Korzeniowski's GR 12(N) response as "K. 12(N) ¶ ___." Citations to the parties' other submissions will also use the "A." and "K." designations.

*Facts*

Korzeniowski worked as a linehaul supervisor for freight carrier ABF from September 25, 1995 until he was fired on August 6, 1997 (A.12(M) ¶ 4). Before his discharge Korzeniowski took a medical leave of absence from October 28, 1996 to January 27, 1997 to undergo leg surgery on a blocked femoral artery (*id.* ¶ 17). When he returned to work (without any restrictions), his ability to act as a linehaul supervisor was unaffected (*id.* ¶ 18). At the same time, Korzeniowski still had cardiovascular heart disease and high blood pressure, for which he took medication, and he has experienced some dizziness and some leg pain (K.12(N) ¶ 19).

On June 16, 1997 Korzeniowski saw his cardiologist, Dr. Surendra Avula. Korzeniowski testified that Dr. Avula then advised him to maintain a "set schedule" so as faithfully to follow his diet and medication schedule (A.12(M) ¶ 20). But neither Dr. Avula nor any other doctor has then or ever placed Korzeniowski under any work-related medical restrictions (*id.* ¶ 22).

After Dr. Avula advised Korzeniowski to maintain a set schedule, Korzeniowski asked Manager of Linehaul Operations Mike Brinker ("Brinker") to remove him from the rotating shift schedule. Brinker complied with Korzeniowski's request, placing him on his preferred day-shift-only schedule,[3] despite the fact that Korzeniowski never provided any medical documentation of his need to work a non-rotating schedule (*id.* ¶¶ 23–25).

On August 6, 1997 linehaul supervisor Jim Fisher ("Fisher") missed his road side day shift due to a family emergency (*id.* ¶ 27). To solve the scheduling problem, Brinker had called Korzeniowski the evening before to ask if he would work the night shift. When Korzeniowski said he preferred not to, Brinker kept him on the day shift but assigned him to the road side position instead of his normal shuttle side position. Brinker based that decision on the fact that Korzeniowski had previously worked as a road side linehaul manager for ABF, while the other linehaul supervisor available that day was new and had no road side dispatching experience (*id.* ¶ 29).

At about 5:00 a.m. August 6, Brinker called shuttle linehaul supervisor Douglas Allen ("Allen") and asked him to tell Korzeniowski about his assignment and to tell him that Brinker would be in early to help him work road side (*id.* ¶ 30). Korzeniowski arrived shortly after that call, and Allen told him of his change in assignment (*id.* ¶ 31). According to ABF, Korzeniowski became upset and said that he was not going to work the road side shift (*id.* ¶ 32). However, Korzeniowski says (and this Court therefore credits) that he never told anyone he would not work the road side position (K.12(N) ¶ 32).

Korzeniowski then approached Scott Mayberry ("Mayberry"), the supervisor whom he was supposed to relieve on the road side shift. While Mayberry was finishing up, Korzeniowski told Mayberry that he wasn't feeling well. At about 6:15 a.m. he left work without first seeking the approval of a superior management em-

---

**3.** K. 12(N) ¶ 24 says that Brinker placed Korzeniowski on the day shift only temporarily, later putting him back on the rotating schedule. But the record does not support such a statement. According to both Brinker's and Korzeniowski's depositions, Brinker put Korzeniowski on the day shift but asked him on just two occasions to fill in on the night shift (as Korzeniowski had agreed he could do when he made his initial request). When Korzeniowski complained that he felt ill after working the night shift, Brinker told him to remain on the day shift (K.Dep.81–83). This example is not the only one in which Korzeniowski's counsel attempts to mischaracterize the underlying deposition testimony. Although normally the nonmovant's statements are credited for Rule 56 purposes, this Court will not do so where the record does not support such statements. In all instances where the K. 12(N) responses are an inaccurate reflection of the record, this Court will credit the corresponding A. 12(M) statements, just as it credits the A. 12(M) statements that Korzeniowski admits.

ployee (A.12(m) ¶ 33). Korzeniowski testified that he drove to Christ Hospital, calling his wife from his car phone on the way and telling her to meet him there. He told her he was experiencing chest pains and tingling in one arm (K.Dep.105–06).

Mayberry testified that he did not believe Korzeniowski was sick, but that he left work because he was angry about being assigned to the road side. Those beliefs were based in part on an earlier conversation when Korzeniowski told Mayberry that he would quit if ABF ever assigned him to work road side again. Mayberry also testified that Korzeniowski did not appear ill and did not say why he felt sick (A.12(M) ¶ 34).[4] In fact Korzeniowski never told anyone at ABF that he was having chest pains or that he was leaving to go to the hospital, nor did he call an ambulance or ask anyone to drive him to the hospital (id. ¶ 35).

When Brinker arrived at ABF at 7:15 a.m., Mayberry told him that Korzeniowski had left work after becoming upset about his assignment. Mayberry also informed Brinker that Korzeniowski claimed to feel ill, but that Mayberry did not believe him (id. ¶ 39). Brinker then called Allen at home to investigate further. Allen told him that Korzeniowski was very upset about being assigned to road side, so that he refused to fill that position and then left work (id. ¶ 40). As noted earlier, Korzeniowski contests that version of events—and in that respect this opinion credits the ABF people's account of their conversations, though it does not credit their characterization of Korzeniowski's reason for leaving (which is what he really disputes).[5]

Brinker testified that he believed Korzeniowski's actions constituted job abandonment. He called Director of Transportation Columbus Dalmut ("Dalmut") and Director of Personnel Dan Griesse ("Griesse"), both of whom agreed that Korzeniowski should be fired for job abandonment (id. ¶¶ 41–45).

After the decision to terminate Korzeniowski had been made, Korzeniowski's wife called Brinker and said her husband was in the emergency room with chest pains. Brinker, Dalmut and Griesse testified that the information did not change their belief that Korzeniowski had abandoned his job. They felt he was simply trying to cover up his decision to abandon his job (id. ¶¶ 47–48). On August 7, 1997 Brinker sent Korzeniowski a letter stating that his employment had been terminated for job abandonment (id. ¶ 49).

### ADA Claim

ADA § 12112(a) reads:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

To recover under ADA a plaintiff must show, paraphrasing *White v. York Int'l Corp.*, 45 F.3d 357, 360–61 (10th Cir.1995):

  1. that he is a disabled person within ADA's definition of that concept;

---

4. Korzeniowski has moved to strike A. 12(M) ¶ 34 as well as a whole set of other A. 12(M) paragraphs—a motion that is addressed at the end of this opinion. As to A. 12(M) ¶ 34 he argues that Mayberry is incompetent to testify to Korzeniowski's medical condition because he was not an expert witness. But Mayberry was testifying only as a layman, giving his personal observations about how Korzeniowski looked and, importantly, as to what Korzeniowski did and did not say. Mayberry need not be an expert to offer such testimony. Korzeniowski's objections to the other paragraphs are similarly baseless, and even if some had merit they would not affect the result. Along the same lines as stated in the last sentence of n. 3, wherever Korzeniowski's only response to an ABF statement is such a baseless objection this opinion will treat the ABF statement as admitted.

5. It should be made plain that the differing versions described in the text have no effect on the result here.

2. that he is also "qualified" in the sense defined in Section 12111(8); and

3. that the employer terminated him because of his disability.

Of course the first of those three requirements presents a threshold question: If a person is not "disabled" there is no need to proceed further with the inquiry (*Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446, 1454 (7th Cir.1995)). And for that purpose Reg. § 1630.2(g) defines "disability" with respect to an individual as:

(1) A physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(2) A record of such an impairment; or

(3) Being regarded as having such an impairment.

Here Korzeniowski lays claim to disability status under each of the first and third criteria.

For its part, ABF does not dispute that arteriosclerotic heart disease is an "impairment" for ADA purposes. It argues instead that Korzeniowski's health problems do not amount to a disability (see the teaching in *Roth*, 57 F.3d at 1454 that not every "impairment" is necessarily an ADA "disability"). To satisfy the disability standard, Reg. § 1630.2(g)(1) requires that the impairment "substantially limits one or more ... major life activities."

Although ADA itself does not define "substantially limits" or "major life activity," the Regulations provide guidance that the case law has honored as definitive. "Major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working" (Reg. § 1630.2(i)). And under Reg. § 1630.2(j)(1) the term "substantially limits" describes a person who is:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

Finally, these three factors are to be considered in any determination of whether an individual is substantially limited in a major life activity (Reg. § 1630.2(j)(2)):

(i) The nature and severity of the impairment;

(ii) The duration or expected duration of the impairment; and

(iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

■ K.Em. 4 says that Korzeniowski is substantially limited in his ability to walk, work and have sexual intercourse. But analysis reveals that none of those claims, either singly or in combination, meets the disability standard.

As for Korzeniowski's claimed impotence, this opinion need not address whether such a condition could ever constitute a disability, because the testimony cited for that asserted impairment indicates only that he had a temporary problem while taking a previous medication (K.12(N) ¶ 57).[6] Such a temporary condition does not rise to the level of a disability.

As for Korzeniowski's difficulty in walking, he says that since his leg surgery he experiences numbness if he walks "great distances" (K.Dep.217–18). On that score, an inability to walk "great distances" with complete comfort is not a significant restriction on Korzeniowski's ability to walk,

---

**6.** It is troublesome that Korzeniowski does not include among his exhibits several pages

that he cites in his Memorandum.

in terms of the relevant comparison to the average person's ability to walk.

Finally, Korzeniowski argues that he is substantially limited in his ability to work because his health condition prevents him from working rotating shifts.[7] Even assuming that to be true (although the evidence is certainly unclear on this point), such a restriction does not constitute a substantial limitation on the major life activity of working. Just as in *Roth*, 57 F.3d at 1454–55 a surgeon's inability to work long shifts due to an eye condition did not rise to disability level, Korzeniowski's asserted inability to work rotating shifts does not meet that standard either. As *Patterson v. Chicago Ass'n for Retarded Citizens*, 150 F.3d 719, 725 (7th Cir.1998) (internal quotation marks and citation omitted) has reconfirmed:

> This Court has held that an inability to perform a particular job for a particular employer is not sufficient to establish a substantial limitation on the ability to work; rather, the impairment must substantially limit employment generally.

And just within the past few weeks the Court of Appeals for the First Circuit has addressed and rejected the same kinds of contentions that Korzeniowski advances here, upholding summary judgment in an employer's favor with the use of language readily transferable to this case (*Tardie v. Rehabilitation Hosp.*, 168 F.3d 538, 541–42 (1st Cir.1999)).

Here innumerable jobs are of course available that do not involve rotating shifts. In fact, within two months after his termination by ABF Korzeniowski obtained a job with another trucking company (and he is still employed) as a road side dispatcher (A.12(M) ¶ 5)—a job that is not suggested as involving greater work demands than the one he held with ABF—

though it has a non-rotating schedule (K.12(N) ¶ 64). It would indeed be a bizarre notion of disability under which Korzeniowski could claim statutory incapacity even while he is holding and performing an essentially equivalent job.

In sum, Korzeniowski is simply not substantially limited in any major life activity, be it working, walking or having sex. So he loses on his effort to involve Reg. § 1630.2(g)'s first definition of disability.

As for the alternative third regulatory distinction, Korzeniowski offers no evidence that ABF regarded him as disabled. K.Mem. 6–7 points only to the fact that he asked to be put on a non-rotating shift as purported evidence that ABF regarded him as disabled. As already explained, that request did not indicate that he was substantially limited in a major life activity. Without any other evidence, Korzeniowski cannot establish that ABF regarded him as disabled.

Because there is no genuine issue of material fact as to whether Korzeniowski is substantially limited in any major life activity or whether ABF regarded him as such, ABF's motion for summary judgment on Korzeniowski's ADA claim is granted. That claim is dismissed with prejudice.

### ADEA Claim

■ Although Korzeniowski, who was 51 when ABF terminated him, is within the scope of ADEA coverage, his discharge did not violate that statute either. Even if Korzeniowski's version of events is fully credited, with this Court assuming that ABF fired him because he left work to go to the hospital after he had really suffered chest pains,[8] he still cannot make out an ADEA claim. Under Rule 56 jurisprudence, he must at least create a reasonable inference that ABF fired him because of

---

7. Other than avoiding strenuous exercise and maintaining a set schedule, Korzeniowski and his doctor testified to no other restrictions on Korzeniowski's life activities resulting from his heart disease and high blood pressure (A.12(M) ¶¶ 58–59).

8. That assumption would require a considerable stretch of the evidence, even with the required reasonable pro-Korzeniowski inferences.

his age, and no evidence even hints that his age was considered at all.

It is worth noting that each of Brinker, Griesse and Dalmut, the main players in Korzeniowski's termination, was over 40 years of age at the time (Brinker was 43, Dalmut 50 and Griesse 41) (A.12(M) ¶ 68)—see *Mills v. First Fed. Sav. & Loan Ass'n*, 83 F.3d 833, 842 (7th Cir.1996), finding it "significant, though perhaps not dispositive," that allegedly discriminatory conduct was committed by someone who was over 40 and was 2 years older than plaintiff. Furthermore, Brinker himself had previously suffered a heart attack (A.12(M) ¶ 68). As *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1400 (7th Cir. 1997) has put it in a Title VII case, "[a] little common sense is not amiss in a discrimination case," thus calling it "highly unlikely" in the circumstances there that a decisionmaker in the protected class would be prejudiced against another member of that class.

Finally, Brinker himself had recommended Korzeniowski for his job in 1990, when Korzeniowski was already over 40 (A.12(M) ¶ 13). *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir.1996) (citation and quotation marks omitted) has in material part quoted from *Proud v. Stone*, 945 F.2d 796, 796 (4th Cir.1991) to underscore the common sense significance of that fact in another ADEA case:

> Claims that employer animus exists in termination but not in hiring seem irrational. From the standpoint of the putative discriminator, it hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job. The fact that the actor involved in both employment decisions is also a member of the protected class only enhances the inference.

K.Mem. 10–12 offers a confusing argument that ABF's decisionmaking process was not "deliberate, reasoned and fair," pointing to supposed contradictions between Brinker's deposition and Dalmut and Griesse's affidavits. But apart from momentarily diverting this Court from the actual issue at hand, that contention does nothing to support Korzeniowski's ADEA claim. He does not even attempt to characterize his arteriosclerotic condition as a proxy for age (perhaps a more tenable, though still a losing, argument). As A.Mem. 8 states accurately, under the cases Korzeniowski could not establish liability under ADEA merely by claiming that his age is somehow connected to his health (see *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611–13, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993), finding that a plaintiff cannot establish an ADEA claim by pointing to the correlation between age and pension status; *EEOC v. G–K–G, Inc.*, 39 F.3d 740, 746 (7th Cir.1994), stating that terminating an employee to save salary costs "would be a lawful motive" even though there is a high correlation between age and compensation).

Because no genuine issue of material fact exists as to whether ABF fired Korzeniowski based on his age, Korzeniowski's ADEA claim also fails. ABF's summary judgment motion as to the ADEA claim is also granted, and that claim too is dismissed with prejudice.

### Intentional Infliction of Emotional Distress Claim

With both of Korzeniowski's federal claims having been dispatched, the 28 U.S.C. § 1367(a) jurisdictional underpinning for his common law claim charging ABF with the intentional infliction of emotional distress has been removed. In that respect *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (footnotes omitted) remains the seminal authority:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dis-

missed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

Just a few months ago *Payne v. Churchich*, 161 F.3d 1030, 1043 (7th Cir.1998) confirmed that the *UMW v. Gibbs* teaching is still alive and well in this Circuit:

> Indeed, when the district court dismisses all federal claims before trial, the usual and preferred course is to remand the state claims to the state court unless there are countervailing considerations.[9]

There are, to be sure, two limited exceptions identified the earlier decision in *Moses v. County of Kenosha*, 826 F.2d 708, 710–11 (7th Cir.1987) (per curiam):

> 1. if the statute of limitations has run on the nonfederal claim, precluding filing of a separate state lawsuit; or
>
> 2. if "substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort" (*id.*, quoting *Graf v. Elgin, J. & E. Ry.*, 790 F.2d 1341, 1347–48 (7th Cir.1986)).

That first exception is inapplicable because of the saving provision of 735 ILCS 5/13–217, and the second exception is inapplicable because this Court has not given substantial consideration to Korzeniowski's retaliation claim. In the latter respect, judicial economy is not served by a federal court's retention of a state claim where a state court would face no more work (*Moses*, 826 F.2d at 711).[10] So Korzeniowski's

intentional infliction of emotional distress claim is dismissed without prejudice.

*Conclusion*

Korzeniowski has failed his burden of demonstrating the existence of any genuine issue of material fact (even with the benefit of favorable inferences) that would support a prima facie case of disability or age discrimination.[11] Accordingly ABF is entitled to judgment as a matter of law on the ADA and ADEA claims. Both of those claims are dismissed with prejudice. Korzeniowski's claim for intentional infliction of emotional distress is dismissed without prejudice. Finally, this combination of rulings calls for dismissal of this entire action.

---

9. [Footnote by this Court] *Payne* spoke of "remand" because that case came to the federal court via removal from the state court. But *UMW v. Gibbs* calls for an equivalent outcome—dismissal rather than remand of the state claims—when a case is originally filed in the district court.

10. It is true that this Court has from time to time in the past dealt with the Illinois Supreme Court's teaching in this area of law, including *Geise v. Phoenix Co. of Chicago*, 159 Ill.2d 507, 516–17, 203 Ill.Dec. 454, 639 N.E.2d 1273, 1276–78 (1994) as now limited by *Maksimovic v. Tsogalis*, 177 Ill.2d 511, 227 Ill.Dec. 98, 687 N.E.2d 21 (1997). But here

the inquiry into Korzeniowski's common law claim is not at all concluded by this opinion's analysis of his ADA and ADEA claims, so no advantage would be gained by keeping the claim here for resolution.

11. As stated earlier, Korzeniowski has filed a motion to strike fully 15 paragraphs in the A. 12(M) statement. It would be a waste of effort to parse that motion, for it primarily comprises quibbles that cannot affect the conclusions here in any event. This Court has reviewed the motion and the challenged paragraphs, and it simply denies the motion as immaterial.