PUBLISH

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

----------------------------------------------

No. 98-2668

----------------------------------------------

D. C. Docket No. 97-CV-1576

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
08/03/99
THOMAS  K. KAHN
CLERK

LINDY GRIFFIN,

Plaintiff-Appellant,

versus

GTE FLORIDA, INC., a Florida corporation,

Defendant-Appellee.

-------------------------------------------------------------------

Appeal from the United States District Court
for the Middle District of Florida

-------------------------------------------------------------------

( August 3, 1999 )

Before EDMONDSON and BLACK, Circuit Judges, and PAUL*, Senior District Judge.

------------------

\*      Honorable Maurice M. Paul, Senior U.S. District Judge for the Northern District of Florida, sitting by designation.

PER CURIAM:

The plaintiff in this case--Lindy Griffin--appeals a district court order granting summary judgment in favor of his former employer GTE Florida, Inc. (GTE) on Griffin's ADA retaliation claim. We conclude that Griffin has failed to make out a prima facie case of retaliation. So, we affirm the judgment.

Background

Griffin, a GTE employee since 1971, began having problems at work in the Summer of 1994 when Roger Kennedy became his boss. At that time, Griffin was a Service Center Supervisor in GTE's Tampa Dispatch and Assignment Center. Kennedy was the Service Center Manager for the office.

Kennedy was loud, demanding, and sometimes profane. Working for Kennedy caused Griffin great stress. Griffin's problems with Kennedy continued until 27 February 1995 when Griffin--unable to deal with the stress of his job--began a period of sick leave which lasted until August 1995. While on sick leave, Griffin contacted EEO counselor Nancy Dinkel and a meeting was set up with Griffin, Dinkel, and Dick Bitner (GTE's Florida Employee Relations Coordinator) in March 1995 to see if the problem could be worked out. Griffin complained at this meeting that Kennedy was

2

disrespectful and did not believe in GTE's employee empowerment philosophy. Griffin also said that Kennedy's behavior was causing Griffin great stress.

Later in March, another meeting--this one involving Griffin, Kennedy and Bitner--was organized to discuss the situation further. Griffin said he was seeing a doctor and was depressed by working under Kennedy. Kennedy agreed at that time to modify his behavior to accommodate Griffin. Griffin remained on sick leave, though, saying Kennedy would never change his management style.

Next, Griffin met with Kennedy and Kennedy's boss: General Manager Frank Brock. After the meeting, Brock tried to see if he could transfer Griffin to another department. For two months, Brock asked other supervisors if they were willing to switch positions with Griffin; but they were not.

It was during this time that Griffin applied for a job within GTE reporting to Nick Buono; Griffin was interviewed by Buono on 17 July 1995 but was rejected. Felix Perez was selected for the job. Also during this period of sick leave, Griffin's psychiatrist, Dr. Edson, began sending letters on his behalf to GTE saying that Griffin could not return to work but might be able to return to work "in another setting with a different supervisor."

In August 1995, Griffin requested a 30-day departmental leave, which was granted. Griffin returned to work in September; but, after working for Kennedy for

only about a week, he requested a transfer. On September 18, Griffin requested a personal leave of absence, which again was granted. The leave was scheduled to last until 10 March 1996. While Griffin was on this leave he applied for three more jobs within the company but received no interviews for any of them.

On 9 February 1996 he filed a charge of discrimination alleging age and disability discrimination. Because Griffin could not find another job with GTE and refused to come back to his old job which remained open, his employment was terminated on 10 March 1996. In May 1996 Griffin filed another claim of discrimination and then filed suit in June 1997 against GTE for violating the Age Discrimination in Employment Act (ADEA), the Florida Human Rights Act (FHRA), the Americans with Disabilities Act (ADA), the Employee Retirement Income Security Act (ERISA), and for retaliating against him for filing his first charge of disability and age discrimination in February 1996. Griffin eventually dropped his ADEA, FHRA, and ERISA claims, and the district court granted a motion for summary judgment for GTE on the remaining ADA and retaliation claims. Griffin appealed, pressing only his retaliation claim.

## Discussion

We examine a plaintiff's claim of retaliation under the ADA using the same framework as a claim of retaliation under Title VII. See Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1287 (11th Cir. 1997). "To establish a prima facie case of retaliation, a plaintiff must show: (1) statutorily protected expression; (2) adverse employment action; and (3) a causal link between the protected expression and the adverse action." Id.

We review a district court's summary judgment order de novo applying the same standard as the district court. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1117 (11th Cir. 1993). Although the general standard for summary judgment is clear, see Fed. R. Civ. P. 56, we note that some dispute exists about the more focused inquiry of how much evidence a plaintiff must introduce on each element of a prima facie case to make out a triable issue of fact on the ultimate issue of discrimination or retaliation (and therefore to survive summary judgment). Some courts have said that "[a]t the summary judgment stage, [the plaintiff] bears the burden of coming forward with sufficient evidence to create genuine issues of material fact regarding each of th[e] elements [of the prima facie case]." Harris v. H & W Contracting Co., 102 F.3d 516, 523 (11th Cir. 1996); see also Arrington v. Cobb County, 139 F.3d 865, 875 (11th Cir. 1998) (because a jury might reasonably find for plaintiff on the elements of the prima facie case, plaintiff had established a prima facie case sufficient to withstand

summary judgment). But some other cases support the proposition that a plaintiff must prove, by a preponderance of the evidence, each element of the prima facie case to avoid summary judgment. See Laughlin v. Metropolitan Washington Airports Auth., 149 F.3d 253, 258 (4th Cir. 1998) (stating, in summary judgment context, that plaintiff first "must establish, by a preponderance of the evidence, a prima facie case of retaliation"); Greenslade v. Chicago Sun-Times, Inc., 112 F.3d 853, 863 (7th Cir. 1997) ("To prove [a] claim [of sex discrimination], [a plaintiff] first . . . must establish a prima facie case of sex discrimination by a preponderance of the evidence. Without a prima facie case, [a plaintiff's] claim cannot withstand summary judgment.") (internal citations omitted); Coutu v. Martin County Bd. of County Comm'rs, 47 F.3d 1068, 1074 (11th Cir. 1995) (affirming a directed verdict for the defendants because the plaintiff "failed to prove the first element of the prima facie case"); Jones v. Gerwens, 874 F.2d 1534, 1538 (11th Cir. 1989) (saying in context of summary judgment that plaintiff has to "prove by a preponderance of the evidence a prima facie case of employment discrimination").[1]

_____

[1]Some support for the latter position arises from the circumstance that the prima facie case is not submitted to the jury. See Dudley v. Wal-Mart, 166 F.3d 1317, 1322 (11th Cir. 1999) ("Whether a plaintiff has 'made out a prima facie case has no place in the jury room.'") (citing Walther v. Lone Star Gas Co., 952 F.2d 119, 127 (5th Cir. 1992)); see also Committee on Pattern Jury Instructions, District Judges Ass'n of the Eleventh Circuit, Pattern Jury Instructions (Civil Cases), Federal Claims Instructions 7.1 (1990) (reciting the jury instructions on a claim under the Age Discrimination in

We need not decide which standard is correct to decide this case, however. Even accepting (for argument's sake) the lesser burden as the correct one, Griffin has failed to meet that low standard of creating genuine issues of fact on each and every element of the prima facie case.

Turning to the prima facie case, no one disputes that Griffin has met the first element. The timing of Griffin's statutorily protected expression, however, is the subject of much debate on appeal. GTE contends the expression did not occur until Griffin filed his EEOC complaint in February 1996. Griffin argues that the conduct occurred almost a full year earlier, when Griffin first met with EEO Counselor Dinkel in March 1995. Determining the date is important, the parties say, because the adverse employment action must follow the statutorily protected conduct. If 9 February 1996 is the correct date, then the only adverse employment action we may consider is Griffin's alleged constructive discharge in March 1996.[2] If March 1995 is the correct starting point, however, we may also consider GTE's alleged failure to consider Griffin for the positions for which he applied.

_____

Employment Act (ADEA), which do not include the elements of the ADEA prima facie case). Given that the prima facie case is a threshold matter for the judge, what a reasonable jury might find on each element of the prima facie case would seem not to be the critical inquiry.

   **2**This conduct is the only protected conduct that the district court considered.

We need not decide this timing question. Again, even accepting that Griffin engaged in protected conduct at the earliest date suggested (March 1995), Griffin was not subjected to adverse employment action by not being considered for other jobs. Also, we doubt that Griffin suffered adverse employment action in the form of constructive discharge. Even if he was constructively discharged, though, Griffin has failed to show a causal connection between the discharge and the protected conduct. He has thus failed to make out the prima facie case.

## I. Adverse Employment Action

As highlighted earlier, Griffin advances two possible adverse employment actions: (1) GTE's refusal to consider him seriously for other jobs; and (2) constructive discharge.

## A. Consideration for Other Jobs

Griffin contends that GTE took adverse employment action against him by refusing to consider him seriously for the four other jobs for which he applied within

the company. Griffin, however, has failed to show that he was not considered for the positions. Griffin proposes chiefly two pieces of evidence to show that he was never considered for these positions: (1) in 24 years he had never heard of a GTE employee having to apply for another job within the company; and (2) the one interview he was granted lasted only 15 minutes. Neither of these points, when taken in the context of the other facts we know, is sufficient to show that he was not seriously considered for the jobs.

About Griffin's first point, he has presented no evidence that GTE employees are free to transfer jobs without applying and interviewing; Griffin could only speak of his personal experience. And when pressed, he admitted that he did not know whether or not the employees who had transferred in the past had applied for the jobs; he simply had not heard that they did. Moreover, he also admitted that by the time he left GTE, the company was "very heavily involved" in requiring lateral transfers to apply and interview for positions.

About Griffin's second point, that the interview with Buono seemed short (approximately 15 minutes) is insufficient to show Griffin was categorically excluded from obtaining that position.

To the contrary, the uncontradicted facts show that Griffin applied for four jobs in the company while he was on leave. He received an interview in one, which is

9

itself evidence that he was under consideration. Although that position went to Felix Perez, Griffin does not dispute that Perez had more experience in the relevant area. Nor does Griffin dispute that the people hired for the three other jobs were also more qualified than he was.[3] No evidence contradicts that Frank Brock met with Griffin and then attempted for two months to find employees to switch jobs with Griffin. In the light of the record, Griffin was being considered for other positions.

In short, to make out a "failure to consider" adverse employment action, the plaintiff must show that he was, on account of his protected conduct, disqualified from the position in a way that other employees were not. Griffin has not come close to meeting this standard here. Griffin has produced no evidence that GTE failed to consider him for other positions other than the fact that he ultimately failed to get the jobs.

B. Constructive Discharge

Griffin also contends GTE constructively discharged him by making his job so miserable that he had no choice but to leave. To prove a constructive discharge, "a

---

[3]GTE submitted evidence showing the superior qualifications of the other employees interviewed and hired for these positions. Griffin admitted that he did not even know who received interviews or was hired.

plaintiff must demonstrate that working conditions were 'so intolerable that a reasonable person in her position would have been compelled to resign.'" Poole v. Country Club of Columbus, Inc., 129 F.3d 551, 553 (11th Cir. 1997) (quoting Thomas v. Dillard Dep't Stores, Inc., 116 F.3d 1432, 1433-34 (11th Cir. 1997)).

We are doubtful that Griffin's claim of constructive discharge has met this standard. Nonetheless, we will accept for the sake of argument that Griffin has shown he was constructively discharged.

## II. Causal Connection

On this constructive discharge argument, however, Griffin stumbles on the causal connection element. At a minimum, Griffin must show that the adverse act followed the protected conduct; this minimum proof stems from the important requirement that "the employer was actually aware of the protected expression at the time it took adverse employment action." Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993). See also McDonnell v. Cisneros, 84 F.3d 256, 259 (7th Cir. 1996) (stating that when alleged retaliatory conduct was the same continuous harassment that gave rise to the initial complaint, no action will lie unless, after she filed the initial complaint, "[t]here was [a] ratcheting up of the harassment."). Griffin,

11

however, has put forth no evidence that Kennedy's harassment worsened after Griffin complained to Dinkel.[4] To the contrary, the uncontradicted record shows that Kennedy made efforts to better his behavior and did attempt to work things out with Griffin after Griffin complained. Therefore, Griffin has produced insufficient evidence from which a reasonable jury could find a causal connection.

Conclusion

Griffin advanced two theories of adverse employment action in this case: (1) refusal to consider, and (2) constructive discharge. About GTE's refusal to consider him for other jobs, Griffin has failed to create a triable issue of fact on the adverse employment action element of the prima facie case. About the constructive discharge, he has failed to create a triable issue of fact on causal connection. Therefore, Griffin is unable to make out even a prima facie case of retaliation. The district court judgment granting GTE summary judgment is AFFIRMED.

AFFIRMED.

---

[4]To show this change would be difficult because Griffin only returned to work under Kennedy for approximately eleven days after his initial complaint to Dinkel.