**Richard S. SILVERA, Plaintiff,**

v.

**ORANGE COUNTY SCHOOL BOARD, Defendant.**

**No. 98–82–CIV–ORL–19B.**

United States District Court, M.D. Florida. Orlando Division.

Jan. 31, 2000.

Richard S. Silvera, Orlando, FL, pro se.

Frank C. Kruppenbacher, Kruppenbacher & Assoc., P.A., Orlando, FL, M. Susan Sacco, James G. Brown, Brown & Green, P.A., Orlando, FL, for Orange County School Board, defendant.

Michael M. Metz, Fla. Dept. of Labor & Employment Security, Tallahassee, FL, for Florida Department of Labor & Employment Security, Division of Unemployment Compensation, movant.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

Plaintiff Richard Silvera, who is black, brought this case against the defendant, the Orange County School Board ("Orange County" or the "School Board"), alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1964. A jury trial was held, and the jury returned a verdict in favor of Silvera. Currently pending before the Court is a post-judgment motion by Orange County for judgment as a matter of law or, in the alternative, a new trial (doc. # 122) and a motion by Silvera for a new trial on damages only (doc. # 119). For the reasons that follow, both motions are denied.

## I. Background

On September 23, 1979, Richard Silvera was arrested for lewd assault on a female child. The arrest report indicated that Silvera's wife had discovered Silvera "with his pants down a little and his zipper opened" kneeling in front of his six-year-old step-daughter who had no pants on. Silvera did not admit to committing lewd assault, or any pedophilic activities, and has never admitted guilt on this charge.[1] Silvera pled no contest to the charge, receiving three years probation and a fine. The court, in accordance with Florida law regarding no contest pleas, withheld an adjudication of guilt. Additionally, Silvera had previously been arrested in March of 1979 for battery of his wife; this charge was dropped.

On July 6, 1982, the Orange County School Board hired Silvera as an electric motor repair master. When Silvera interviewed for the job, he told Mack Wright about his prior arrests, the nature of those arrests, his sentence for child molestation, and his continuing probation status.[2]

---

1. At trial, Emma Brown Newton, the Associate Superintendent for Human Resources, testified that Silvera told her that he had indeed committed the act. Silvera denied having ever made such a statement.

2. Orange County introduced evidence at trial, through the testimony of Emma Brown Newton regarding an affidavit written by Wright (Wright did not testify), that Wright had no recollection of being informed by Silvera of his arrests. However, this evidence was contradicted by Silvera's testimony and by the

Mack Wright's exact position with Orange County was not determined at trial, but he interviewed Silvera on behalf of Orange County, hired Silvera,[3] and became his supervisor. After Silvera began working, his probation officer also informed Orange County of Silvera's probationary status and checked in with Silvera's supervisor each month until Silvera's probationary status ended. Silvera had an excellent employment history, was fully qualified to do his job, and worked as an electric motor repairman for nearly fourteen years until he was fired by Orange County on February 13, 1996. Silvera's work site was located off campus, and his daily work activities did not bring him in contact with the students.

While Silvera worked for Orange County, he was arrested on two occasions. On August 7, 1995, Silvera was arrested for battery of his wife, but the charge was dismissed. On December 14, 1995, Silvera was arrested for aggravated assault of his son, and this charge was also dropped. Silvera's son was 17 at the time of the incident and much larger than Silvera. Silvera testified that his son was unruly and had broken Silvera's leg some months prior to the incident. It was alleged in the police report that Silvera had threatened his son with a machete, a fact which Silvera disputes; however, there was no allegation of impermissible physical contact.

On January 4, 1996, a local television station informed members of the Orange County School Board that Silvera and another employee of Orange County, Wayne Ritter, had previously been arrested for child molestation. The TV station told Orange County that they were going to report the story. The next day, Emma Brown Newton, the Associate Superintendent for Human Resources, and at least one other person, met with Silvera and asked him if the television station's information was accurate. Silvera told them that he had been arrested on a child molestation charge sixteen years earlier, before his employment by the School Board. Newton then told Silvera that he was being suspended with pay pending an investigation and that he was entitled to have legal representation present at their next meeting. After the meeting, Silvera was escorted by School Board officials through the assembled throng of reporters and television cameras.

On January 10, 1996, Newton and Ronald Blocker, the Deputy Superintendent for Operations, met with Silvera and his attorney. At this meeting, Silvera gave them his arrest records and explained to the Orange County officials that, when he interviewed for the job, he fully disclosed his past legal problem to Mack Wright, who told him that this would not pose a problem. Following the January 10 meeting, Orange County officials conducted some further investigation. This included contacting Wright, who denied being told about Silvera's arrests. At some point between January 10 and February 13, 1996, Newton and Blocker, in consultation with other officials, recommended to the School Board that Silvera be terminated. On February 13, by unanimous vote, the

testimony of William Irvine, Silvera's probation officer. Irvine testified that he informed Orange County of Silvera's probation status and checked on Silvera's status with Orange County every month that Silvera remained on probation. Further, Irvine testified that he would have asked Silvera's supervisor if Silvera himself had informed his supervisor of his probationary status, as Silvera was required to do under the terms of his probation, and that if Silvera had not, Irvine would have reported it as a probation violation. Irvine additionally testified that Silvera did not have any probation violations, that he received good reports from his work supervisor, and that Irvine took the rare step in Silvera's case of requesting early termination of his probation.

3. There was some confusion at trial over what authority Mack Wright had to hire Silvera. What is clear is that Mack Wright worked for the School Board and either hired Silvera on his own decision, or made a successful recommendation to the School Board (or others higher up the chain than Wright) that Silvera be hired.

Orange County School Board formally terminated Silvera.

Orange County maintained that Silvera was terminated because of the lewd assault charge and because of his other more immediate arrests. However, the lewd assault charge was the "triggering" event and Orange County officials admitted that they would have fired Silvera solely because of the lewd assault charge, even if there had been no other arrests. Orange County did not investigate whether Silvera's job brought him in contact with students and made no attempt to find an accommodation for Silvera that would allow him to retain his job.

Wayne Ritter worked as a custodian for Orange County from sometime in the 1970's until his retirement in 1997. Ritter, a white male, is somewhat mentally retarded. In 1977, while working for Orange County, Ritter was arrested for a lewd assault on a minor. Like Silvera, he pled no contest, was put on probation, and adjudication of guilt was withheld. Ritter's lewd assaults occurred on school property and involved students of Orange County. One of the allegations involved Ritter luring young boys into the locker room, engaging in graphic sexual discussion with them, exposing and touching his genitals in their presence, making homosexual advances, and touching, or encouraging the students to touch, their genitalia. There was at least one lawsuit filed against Orange County by parents of a child who was allegedly molested; the outcome of this lawsuit is not known to the Court. It is unclear how many children Ritter had inappropriate contact with, but there was evidence to indicate that there might have been multiple occurrences spanning one or two years. Orange County did not terminate Ritter, but arranged to have his work routine altered so that he would not have unsupervised contact with the schoolchildren. Apparently this arrangement was

partially the result of a request by Michael Penn, the officer who supervised Ritter following his sentence, who asked the School Board to accommodate Ritter and help in his rehabilitation.

Following the television station's notice to the School Board in January 1996, Ritter was also suspended with pay pending an investigation. During the investigation, the School Board learned that Ritter had also been arrested on a DUI charge in 1994, a charge which was dropped. As part of their investigation, School Board officials closely examined the DUI charge and concluded that it was probably unfounded.[4] Orange County officials also discovered during their investigation that Ritter's alleged lewd assault had occurred on school property, while he was employed by the School Board,[5] and that the School Board made accommodations in 1977 which allowed Ritter to retain his job. In 1996, Orange County decided not to terminate Ritter's employment. Orange County asserted that the sole reason they did not terminate Ritter in 1996 was because they were bound by a former "agreement" between a prior superintendent and a state attorney. However, there was no evidence, other than Orange County's assertions, that such an agreement actually existed, or as to the specific parties to any such agreement.

After his termination, Silvera successfully sought unemployment compensation on the grounds that he was not terminated for work misconduct and unsuccessfully sought a claim of wrongful termination under the terms of the collective bargaining agreement. At neither of these proceedings did Silvera litigate the issue of racial discrimination. On January 27, 1998, Silvera filed the present action, asserting that he was unlawfully discriminated against on the basis of race in viola-

---

4. Like Ritter, the charges were dropped on all of Silvera's arrests other than the lewd assault; however, Orange County made no attempt, as they had done for Ritter, to determine how legitimate these other arrests were.

5. The current members and agents of the School Board who testified did not have any knowledge, before the television reporters' disclosure, of Ritter's past sexual misconduct.

tion of Title VII. The case originally came before United States District Court Judge Patricia Fawsett, who decided most of the pretrial matters, including a denial of Orange County's motion for summary judgment. A jury trial was held on July 6–8, 1999 before this Court, and Silvera, trying his case *pro se,* won a favorable verdict by the jury. Although the jury found for Silvera, they declined to award compensatory damages. After this Court entered judgment and awarded Silvera back pay, front pay, and appropriate interest, Orange County timely filed its motion for judgment as a matter of law or, in the alternative, a new trial, and Silvera timely filed his motion seeking a new trial for determination of compensatory damages only.

## II. Framework For a Title VII Discrimination Claim Under *McDonnell Douglas*

Silvera has brought his claim under Title VII of the Civil Rights Act of 1964. In Title VII discrimination cases, a plaintiff can prove his case through the use of circumstantial evidence, despite a lack of direct evidence, using the standards established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Pursuant to that framework, the burden is on the plaintiff to first establish a prima facie case of discrimination. *Id.* at 802, 93 S.Ct. 1817. In order to establish a prima facie case for the discrimination alleged in this case, Silvera must establish that: 1) he is a member of a protected class; 2) he was qualified for the job; 3) he was subjected to an adverse employment action; and 4) a similarly situated employee outside of the protected class was treated more favorably. *See Lathem v. Department of Children and Youth Services,* 172 F.3d 786, 792 (11th Cir.1999); *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997). "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Holifield* at 1562.

Once the plaintiff has established a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Combs v. Plantation Patterns,* 106 F.3d 1519, 1527 (11th Cir. 1997). In order to avoid judgment as a matter of law, the employer need not persuade the court that it was actually motivated by the proffered reasons; "the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment action had not been motivated by discriminatory animus." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 257, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the employer meets this burden, the presumption of discrimination created by the *McDonnell Douglas* framework drops from the case. *See Combs,* 106 F.3d at 1528.

■ After the initial presumption of discrimination drops from the case, the plaintiff can try to discredit the employer's proffered non-discriminatory reasons for the adverse employment action. The plaintiff need not produce new evidence in order to discredit the employer's non-discriminatory reasons, but may rely on his initial evidence and effective cross-examination. *Id.* The plaintiff may succeed in his efforts either by directly "persuading the [trier of fact] that a discriminatory reason more likely motivated the employer *or indirectly by showing that the employer's proffered explanation is unworthy of credence.*" *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089 (emphasis added). If the evidence produced by the plaintiff is sufficient to allow a rational trier of fact to reject the employer's proffered non-discriminatory reasons, then the trier of fact may conclude (but is not required to conclude) that the employer discriminated against the plaintiff. In other words, if a plaintiff asserts a prima facie case of discrimination, is able to cast reasonable doubt upon the defendants' proffered non-discriminatory reasons for firing the plaintiff, and

receives a favorable verdict from the jury, then granting the defendants' motion for judgment as a matter of law is inappropriate. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511–13, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *see also Combs,* 106 F.3d at 1529 (stating that under *Hicks,* the factfinder's disbelief of the non-discriminatory reasons put forth by employer, combined with the elements of a prima facie case, may suffice to show intentional discrimination).

## III. Judgment as a Matter of Law

### A. Reasonableness of jury verdict

█ When considering a motion for judgment as a matter of law, all evidence, and the inferences reasonably drawn therefrom, is considered in the light most favorable to the nonmoving party. *Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989). Such a motion should be granted only if there is overwhelming evidence that reasonable people could not have arrived at a verdict contrary to the moving party. *Id.* "If there is substantial evidence that reasonable people, in the exercise of impartial judgment, might reach differing conclusions," judgment as a matter of law is inappropriate. *Id.*

█ In deciding a motion for judgment as a matter of law "in a discrimination case in which the defendant has proffered nondiscriminatory reasons for its actions," this Court's task is a "highly focused one." *Combs,* 106 F.3d at 1538. The Court must "determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct." *Id.* (citation and internal quotation marks omitted). The Court should evaluate "whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reasons for its actions that a reasonable factfinder could find them unworthy of

credence." *Id.* (citation and internal quotation marks omitted).

█ In this case, Silvera established a prima facie case both at the summary judgment stage and at trial, and Orange County articulated non-discriminatory reasons for firing Silvera that were sufficient to drop the presumption of discrimination from the case. Thus, the issue for this Court to decide is whether there was sufficient evidence produced at trial for the jury to reject Orange County's allegedly non-discriminatory reasons for firing Silvera, and for not firing Ritter. If a reasonable jury could have concluded that Orange County's asserted non-discriminatory reasons were not its real reasons, then this Court "may not preempt the jury's role of determining whether to draw an inference of intentional discrimination from the plaintiff's prima facie case taken together with the rejection of the employer's explanations for its actions." *Id.*

Orange County asserted two non-discriminatory reasons for firing Silvera and retaining Ritter: 1) because of a prior "agreement" between Ritter and Orange County that prevented Orange County from firing Ritter on the basis of the lewd assault; and 2) because of the immediacy and violent nature of Silvera's 1995 arrests. Turning to the second reason first, the evidence at trial clearly demonstrated that Silvera's lewd assault charge was the "triggering" event behind Silvera's termination, and that Orange County would have fired Silvera on that basis even if there had been no post–1977 arrests. Ritter also had a recent arrest, his for driving while intoxicated, and, according to Orange County's "story," they also would have fired Ritter but for the pre-existing agreement. Orange County argues that they terminated Silvera because of the more violent nature of his recent arrests. However, since Orange County officials admitted at trial that they would have fired Ritter but for the allegedly binding pre-existing agreement, the jury could reasonably have concluded that Orange County

did not legitimately differentiate between Silvera and Ritter based on differences in their arrests, and that Orange County's assertions were pretextual.

Turning now to Orange County's first reason, the question for this Court to consider is whether a reasonable jury could have rejected Orange County's claim that they retained Ritter because they were bound by a pre-existing agreement. The evidence demonstrated that in 1977 Orange County made generous accommodations to Ritter, allowing him to retain his job even though Orange County had every reason to believe that, on multiple occasions, he had sexually molested young male students on campus. The evidence also demonstrated that Orange County made no similar attempts to accommodate Silvera in 1996 (or even considered doing so), despite the fact that his alleged molestation had not involved school students, that his job did not appear to bring him into contact with school students,[6] and that the charges against him had occurred nearly twenty years previously.

The evidence did not demonstrate, however, that Orange County was bound by a previous agreement with the state's attorneys office. The only documentary evidence produced by Orange County to support its "binding preexisting agreement"

argument was a nearly illegible memo written by Orange County's lawyers in 1977. (Ex. 9 to Aff. Richard Blocker). However, that memo was written prior to the existence of any agreement or accommodation, and does not demonstrate the existence of any agreement, let alone a binding one.[7] Further, no one who allegedly made or was involved in this binding agreement testified at trial. The only evidence produced by Orange County on this point was the testimony of Blocker and Newton, who testified that they felt bound by the previous agreement/accommodation. However, they never adequately explained *why* they were bound (or why they felt bound), or how they reached the conclusion that they were bound. In general, this Court found their testimony on this point to be wholly unpersuasive. It is the role of the jury to assess the credibility of witnesses, and this Court finds that a reasonable jury could have rejected Blocker and Newton's testimony as totally unconvincing.

Once Orange County's contention that they were bound by a preexisting agreement is rejected, the fact that Orange County accommodated Ritter in 1977 arguably has little importance. The jury had ample evidence on which to conclude that Orange County knew, or should have

---

**6.** The only evidence indicating that Silvera might have any contact with the students was the testimony of Emma Brown Newton where she stated that "occasionally [Silvera] would have to go out to a school." (Tr. at 313). Her statement is vague and does not, by itself, imply that Silvera would have any contact with students on such "occasions." Further, the other evidence at trial indicated that Newton had very little familiarity with the nature of Silvera's job duties. There was no evidence to indicate that Orange County investigated the matter (or much of Silvera's situation for that matter), and Silvera testified that he did not have contact with students. On this basis, and applying all inferences in favor of Silvera, a jury could easily have concluded that Silvera did not pose any realistic threat to the student body, and certainly posed less of a threat than Ritter.

**7.** Among the legible passages are "Mr. Penn requested that, if at all possible, Mr. Ritter be

allowed to continue his employment with the School Board so as to increase the chances of a successful rehabilitative effort. We instructed Mr. Penn to put his request in writing. Please find attached a copy of his written report." · No such report was produced by Orange County. Additionally there are the following lines, "Before entering into any such cooperative effort with the Department of Offender Rehabilitation we would recommend that the extent of Mr. Ritter's handicap be determined..." While this memo corroborates the fact that there were accommodations made for Ritter in 1977, it does not demonstrate that Orange County reached an "agreement" with the state, let alone a "binding" agreement that prohibited Orange County from terminating Ritter in 1996. This letter, by itself, does not bind a jury to conclude that Orange County had no choice, under the law, but to retain Ritter in 1996.

known, about Silvera's past when they hired him.[8] Thus, the jury could have reasonably concluded that if Orange County owed any duty to Ritter for accommodating him in 1996, they owed a corresponding duty to Silvera. Consequently, the mere fact that Orange County accommodated Ritter in 1977, does not serve as a legitimate non-discriminatory reason for retaining Ritter while firing Silvera in 1996, and certainly does not serve as a reason that the jury must accept.

This Court finds that a reasonable jury could have concluded that Orange County's asserted non-discriminatory reasons for terminating Silvera, while retaining Ritter, are unworthy of credence. Further, a reasonable jury could have concluded that television reporters had placed Orange County in an embarrassing situation and, knowing they had to have a scapegoat, chose to sacrifice the black man and not the white man, thereby intentionally discriminating against Silvera on the basis of race. Therefore, this Court must deny the defendants' motion for judgment as a matter of law.

### B. Orange County's other arguments for judgment as a matter of law

Orange County put forth two additional arguments in their motion for judgment as a matter of law, arguing that Silvera's case must fail because he failed to establish a prima facie case and because his suit should have been barred by res judicta. Neither argument has merit.

■ At this point in the litigation, Orange County's argument that Silvera failed to establish a prima facie case is of no legal consequence. Once there has

been a trial on the merits, it is inappropriate to revisit the question of whether or not a prima facie case was established. *See U.S. Postal Service v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983) (stating that the Circuit Courts should not revisit the issue of whether or not the plaintiff established a prima facie case after a full trial on the merits); *Richardson v. Leeds Police Department*, 71 F.3d 801, 806 (11th Cir.1995) (same analysis applies to district courts). "When the trier of fact has before it all the evidence needed to decide the ultimate issue of whether the defendant intentionally discriminated against the plaintiff, the question of whether the plaintiff properly made out a prima facie case 'is no longer relevant.' " *Richardson*, 71 F.3d at 806 (quoting *Aikens*, 460 U.S. at 715, 103 S.Ct. 1478).

■ Regardless, Silvera clearly established a prima facie case, both in pretrial proceedings and in the evidence presented at trial. Orange County admits that Silvera demonstrated three of the four requirements for a prima facie case, but argues that Silvera failed to identify a similarly situated employee who received more favorable treatment. The 11th Circuit has held that "in determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are...accused of the same or similar conduct and are disciplined in different ways." *Holifield v. Reno*, 115 F.3d 1555, 1562, (11th Cir.1997). In this case, Silvera and Ritter had similar job positions and their employment was called into question for the exact same reason. Silvera was fired; Ritter was not. This is enough to

---

8. Orange County has argued that even if Silvera demonstrated that Mack Wright knew of Silvera's past arrests and probationary status, Silvera did not demonstrate that the actual members of the School Board knew. This Court rejects that argument. Wright either: 1) had the authority to hire Silvera, and thereby was an agent of Orange County and his knowledge is imputed to them; or 2) made a successful recommendation to the School Board that Silvera be hired, in which case he

was also acting as an agent of the School Board. This Court does not find that Silvera needed to directly prove that the then-constituted members of the School Board had personal knowledge of Silvera's lewd assault charges in order for the jury to reasonably conclude that Orange County hired Silvera with knowledge of his past activities and approved him as qualified to work for Orange County despite his past arrests and misconducts.

demonstrate that an employee accused of similar conduct was disciplined in a different way.

Orange County's argument that Ritter was not similarly situated, because he was retarded and because of the pre-existing agreement between Orange County and Ritter, confuses its asserted non-discriminatory reasons for firing Silvera, with a determination of whether or not the two employees were similarly situated for purposes of a prima facie case. A plaintiff is not required to prove every conceivable aspect of his case in order to establish a prima facie case, and Silvera was not required to disprove every possible non-discriminatory reason for his firing in his prima facie case. Orange County's request for judgment as a matter of law on the grounds that Silvera failed to establish a prima facie case is rejected.

Orange County also asks this Court—again—to reverse its previous decisions on claim and issue preclusion. Orange County believes that the hearing before the arbitrator, which was reviewed and approved by Florida state courts, on whether or not Silvera was wrongfully terminated under the terms of the collective bargaining agreement, precludes Silvera's entire claim in this Court on grounds of res judicata and precludes the issue of whether or not Ritter was a similarly situated employee under the doctrine of collateral estoppel.[9] Judge Fawsett, in her order denying summary judgment, rejected both of these arguments because Silvera neither litigated his Title VII claim, nor raised the issue of racial discrimination, in the hearing before the arbitrator. Orange County has not raised any new arguments on this issue in this motion, and this Court agrees with Judge Fawsett's ruling that Silvera's claims are not barred by res judicata or collateral estoppel.

9. Orange County's collateral estoppel argument is raised in the portion of its motion asking for a new trial; however, since the

## IV. Motion For a New Trial

In the alternative to its motion for judgment as a matter of law, Orange County asks this Court to order a new trial. This Court may grant Orange County's motion for a new trial if the jury verdict is contrary to the great weight of the evidence. *C.J. Ard v. Southwest Forest Industries,* 849 F.2d 517, 520 (11th Cir.1988). In deciding this motion, the Court is allowed to weigh the evidence; however, in order to grant a new trial this Court must find that the verdict was "contrary to the great, not merely the greater, weight of the evidence." *Id.*

While the standards for judgment as a matter of law are somewhat different than the standards for granting a new trial, the discussion above, illustrating that judgment as a matter of law is inappropriate, is dispositive on this issue as well. To the extent that this Court made inferences in favor of Silvera in its analysis above, as required in determining whether judgment as a matter of law is appropriate, none of those inferences were against the great weight of the evidence. Therefore, rather than repeating the analysis, this Court notes that, after carefully weighing the evidence, this Court does not find Orange County's reasons for distinguishing between Ritter and Silvera to be credible. Simply put, if this case had been a bench trial, instead of a jury trial, the end result would have been the same. The motion for a new trial on the grounds that the decision was against the great weight of the evidence is denied.

## V. Prejudicial Errors

Orange County also seeks a new trial on the ground that unfairly prejudicial errors occurred during the trial. Orange County believes that it was unfairly prejudiced by: 1) erroneous jury instructions; 2) the admission of prejudicial evidence; and 3) party misconduct. For the reasons dis-

issue is identical to the issue of res judicta, the Court deals with it here.

cussed below, this Court finds that there was no unfair prejudice against Orange County and that even if there were any minimal prejudice, it was not sufficient to merit a new trial.

## A. The jury instructions

■ Orange County believes that two separate sections of this Court's jury instructions unfairly prejudiced the jury in Silvera's favor. The first section that Orange County objects to reads as follows:

> Specifically, Mr. Silvera alleges that the Orange County School Board discriminated against him on the basis of race by terminating his employment based on his past record of criminal conduct, when the Orange County School Board did not terminate the employment of a white employee, Mr. Ritter. Mr. Silvera claims that Mr. Ritter had a similar past record of criminal conduct.
>
> The Orange County School Board denies that it discriminated against Mr. Silvera on the basis of race but instead alleges that it based its termination of Mr. Silvera upon legitimate, nonracial reasons, and that Mr. Silvera and Mr. Ritter did not have similar past records of criminal conduct. (Jury Instructions at pg. 10).

Orange County first objects to the above language on the ground that the Court improperly submitted the prima facie case to the jury, citing *Griffin v. GTE Florida, Inc.*, 182 F.3d 1279, 1282 n. 1 (11th Cir. 1999) for the proposition that the prima facie case should not be submitted to the jury.[10] As described above, in order to establish a prima facie case in a Title VII case such as this one, a plaintiff is required to produce evidence sufficient to demonstrate that: 1) he is a member of a protected class; 2) he was qualified for the job; 3) he was subjected to an adverse employment action; and 4) a similarly situated employee outside of the protected class was treated more favorably. If the plaintiff does this, then an inference of discrimination arises and the defendant must assert legitimate, non-discriminatory reasons for firing the plaintiff in order to avoid judgment as a matter of law. Once the defendant does this, the inference of discrimination drops from the case. (*See* Section II, supra, for case citations).

This Court disagrees with Orange County's contention that the jury instructions submitted the prima facie case to the jury. The jury instructions do not mention the phrase "prima facie case," nor do they discuss an "inference of discrimination" or imply that the jury should arrive at any inferences of discrimination. Additionally, the above-quoted portion of the jury instructions is a factually accurate portrayal of the parties' positions. This Court did not confuse the jury by instructing them on the prima facie case and burden-shifting framework of *McDonnell Douglas*.[11]

Orange County also requested, in light of its position that the jury instructions submitted the prima facie case to jury, that the Court include language to the effect that the jury must find Silvera and Ritter similar in all relevant respects. Since this Court rejects Orange County's contention that the prima facie case was submitted to the jury, there was no error in refusing to include that language. Furthermore, adding the language that Orange County requested might have actually resulted in this Court submitting the prima facie case to the jury, would likely have confused the jury, and would have required this Court to define the legal

10. *Griffin,* a case addressing the propriety of summary judgment, did not "hold" to this effect; the language was clearly dicta, was contained in a footnote, and was qualified by the court. However, the 11th Circuit has stated that it is confusing and inappropriate to instruct a jury on the *McDonnell Douglas* burden-shifting framework. *See Dudley v. Wal–Mart Stores, Inc.,* 166 F.3d 1317, 1322 (11th Cir.1999).

11. If Orange County is objecting to the fact that elements of the facts which made up Silvera's prima facie case were contained in the jury instructions, then Orange County simply misunderstands the nature of a *McDonnell Douglas* discrimination case. As discussed at length above, the plaintiff may still rely on the factual predicate underlying his prima facie case once the inference of discrimination has dropped from the case.

meaning of "all relevant respects" for the jury.

Orange County further argues that the above-quoted portion of the jury instructions "improperly narrowed and focused" the jury's deliberations on the question of whether Silvera and Ritter had a "similar past record of criminal conduct." Orange County believes that this must have confused and misled the jury into ignoring Orange County's argument that Orange County was bound by a preexisting agreement to retain Ritter. This argument is also without merit.

The quoted section, as already stated, is a factually accurate portrayal of the parties' positions. It is a fact that Silvera alleged that he and Ritter had similar past records of criminal conduct, and it is a fact that Orange County disputed this point. It is also a fact that Orange County asserted that it terminated Silvera for legitimate, nonracial reasons. Orange County asserted more than one legitimate, nonracial reason for terminating Silvera, but apparently feels that this Court prejudiced the case by not explicitly explaining to the jury that Orange County believed it was bound by a previous agreement to retain Ritter. Of course, Orange County made this point numerous times throughout the trial, and this Court finds it unlikely that the jury forgot or ignored this argument because it was not explicitly mentioned in the instructions. The jury instructions generally described the parties' positions; it was not the Court's intention to explicitly explain all of the parties' various arguments. Orange County suffered no prejudice on this basis.

■ Orange County separately argues that they were prejudiced by another sentence in the jury instructions, which read: "In showing that his race was a determining factor in the decision of the Orange County School Board to discharge him, Mr. Silvera is not required to prove that his race was the sole motivation or the primary motivation for his discharge." Orange County objects to this language, believing it reduced this case to a mixed

motive case, and argues that the Court should have deleted this sentence and instead instructed the jury that discrimination must be the "real reason" behind Orange County's decision to terminate Silvera.

In addition to the sentence to which Orange County objects, the Court also instructed the jury that "the law requires only that the Orange County School Board not discriminate against Mr. Silvera because of his race. The Orange County School Board can discharge Mr. Silvera for any other reason, good or bad, fair or unfair, and you should not second-guess that decision." The Court also instructed the jury that they "should enter a verdict in favor of the Orange County School Board" if they did not "find that Mr. Silvera has proved by a preponderance of the evidence that the decision of the Orange County School Board was because of his race." These instructions served to appropriately instruct the jury that they could only find for Silvera if he was fired by Orange County because of his race, but that race need not be the only reason motivating Orange County's decision.

It is undisputed that an employer may have non-racial reasons for terminating someone, yet still discriminate on the basis of race in so doing. For example, if a company decides that, for financial reasons, it must lay off one of two employees, who are identical in every respect except one is white and one is black, that company may not choose to fire the black employee solely because he is black. If the company terminates the black employee and not the white employee, they must have some legitimate reason for doing so.

In this case, it is clear that the news report regarding Orange County employing child molesters was a motivating factor in Orange County's decision to terminate Silvera. This is not in dispute, but Silvera alleged that Orange County did not have any reason (except race) for terminating him while not terminating Ritter. The purpose of the instruction to which Orange

County objects was to inform the jury that they were not required to reject Silvera's claim simply because Orange County's initial reason (or primary reason) for wanting to terminate Silvera was because of his lewd assault charge, and/or because of the bad press it was causing Orange County. If the jury believed that Orange County terminated Silvera, yet retained Ritter, because of their racial differences, then Orange County impermissibly discriminated against Silvera. Consequently, the instruction that race need not be the only motivating factor in Orange County's decision was not error.

This Court finds that it did not commit error in the instructions given to the jury and that Orange County was not unfairly prejudiced by this Court's instructions.

## B. Prejudicial evidence

Orange County also believes that the jury was unfairly prejudiced by the testimony of Patricia Zeiss, the appeals referee who decided Silvera's successful application for unemployment compensation. Orange County argues that Zeiss's testimony was either irrelevant, or that its relevance was outweighed by its prejudicial value. This Court disagrees. Zeiss's testimony was relevant to establish that Silvera was not fired for work misconduct. This Court ruled on that basis during trial when Orange County objected to the introduction of Zeiss's testimony. (Tr. at 190–93). In their present motion, Orange County does not even address this Court's ruling that evidence demonstrating that Silvera was not fired for work misconduct is relevant.

Zeiss testified, briefly, that under the law for unemployment compensation, Silvera did not commit work misconduct. On cross-examination, it was clearly established that the unemployment compensation hearing had nothing to do with race or Title VII, that the legal standards were different, and that the purpose of Zeiss's testimony was to establish that Silvera was not fired for work misconduct (which was not a major issue at trial). The introduction of this evidence did not create confu-

sion for the jury. This Court finds that Zeiss's testimony was relevant and was not unfairly prejudicial.

## C. Party misconduct during trial

Orange County also argues that they are entitled to a new trial because of misconduct by Silvera, who represented himself *pro se*, during the trial. If counsel, or in this instance a *pro se* party acting as his own counsel, makes comments that would "impair the calm and dispassionate consideration by the jury" of the relevant facts in the case, a new trial may be ordered. *Allstate Ins. Co. v. James*, 845 F.2d 315, 318 (11th Cir.1988). This Court finds that no misconduct, by either side, approached this standard. Throughout the course of the trial, the Court occasionally had to instruct both Silvera, and counsel for Orange County, that their questions or comments were inappropriate. Of course, this happens throughout the course of any trial, and these occurrences at this trial were not of an unusual nature. Silvera did a remarkably competent job trying his case *pro se*, and, while legal rules caused him some confusion, as they usually do to *pro se* participants, he generally followed this Court's directions.

Orange County specifically alleges that Silvera's comments regarding his unsuccessful claim under his contract with Orange County unfairly prejudiced Orange County. Orange County argues that Silvera's comments and questioning of witnesses allowed him to introduce evidence that he was improperly discharged under the terms of his contract with Orange County. While this Court did have to instruct Silvera on this issue on a few occasions, the comments did not have an unfairly prejudicial effect on Orange County's case. It may have been evident to the jury that Silvera believed he had been wronged by Orange County in a number of ways; however, this fact did not create the kind of prejudicial effect that would require this Court to order a new trial. The jury was clearly instructed that the issue

in this case was whether or not Silvera was terminated on the basis of race, and this Court believes that the jury made its decision on that basis and that basis alone.

## VI. Motion For a New Trial on Damages Only

Silvera requests that this Court order a new trial for the determination of compensatory damages. While the jury returned a verdict for Silvera, they declined to award him compensatory damages; as previously noted, this Court awarded Silvera damages for back pay, front pay, and appropriate interest. This Court finds that the jury's decision not to award compensatory damages was not against the great weight of the evidence. Accordingly, Silvera's motion is denied.

## VII. Conclusion

For the reasons stated above, Orange County's post-judgment motion for judgment as a matter of law, or in the alternative a new trial, is denied. Silvera's post-judgment motion for a new trial on damages is also denied.

This order is final and appealable.

IT IS SO ORDERED.